IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2011 MAR 18 A 8: 30

CLERK _CADaws_
SO. DIST. OF GA.

CALVIN LEE STEVENSON, JR.,          )
                                    )
          Petitioner,               )
                                    )
     v.                             )   CV 110-144
                                    )   (Formerly CR 108-061)
UNITED STATES OF AMERICA,           )
                                    )
          Respondent.               )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

The above-captioned case is before the Court on Petitioner's motion to vacate, set

aside, or correct his sentence under 28 U.S.C. § 2255. For the reasons set forth below, the

Court **REPORTS** and **RECOMMENDS** that the motion be **DENIED**, that this civil action

be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

## I.     BACKGROUND

### A.     Criminal Proceedings

In April of 2008, a federal grand jury returned a five-count indictment against

Petitioner and three co-defendants. The indictment charged Petitioner with one count of

conspiracy to rob a credit union in violation of 18 U.S.C. § 371; one count of hijacking a

motor vehicle in violation of 18 U.S.C. § 2119; one count of armed robbery of a credit union

in violation of 18 U.S.C. §§ 2113(a) & (d); and two counts of using a firearm during a crime

of violence in violation of 18 U.S.C. 924(c)(1)(A)(ii). United States v. Stevenson, CR 108-

061, doc. no. 14 (S.D. Ga. Apr. 3, 2008) (hereinafter "CR 108-061").

Petitioner was initially represented by appointed counsel. Id., doc. no. 21. Petitioner proceeded to a jury trial presided over by the Honorable J. Randal Hall, United States District Judge, and was found guilty on all five counts charged in the indictment. Id., doc. no. 167. Following the jury trial, Petitioner was sentenced to a 505-month term of imprisonment. Id., doc. no. 203. Petitioner's appointed counsel filed an unsuccessful motion for a new trial. Id., doc. nos. 159, 186. The appointment of Petitioner's counsel was then terminated on March 12, 2009 upon Petitioner's retention of Janice L. Mathis to represent him. Id., doc. nos. 176, 179. Petitioner then again moved for, and this time was granted, a new trial on Sixth Amendment grounds. Id., doc. nos. 198, 212. After the grant of Petitioner's second motion for a new trial, Ms. Mathis sought to withdraw as Petitioner's counsel, but was denied permission to do so. Id., doc. nos. 231, 245. However, at that point, Petitioner retained C. Hope Demps as additional counsel to represent him at trial. Id., doc. no. 242. Ms. Demps filed a notice of appearance on April 28, 2010. Id., doc. no. 238. The new trial was initially set for May 10, 2010, but was rescheduled for May 24, 2010 upon Judge Hall's grant of a motion for a continuance filed by Ms. Demps. Id., doc. no. 251. While trial preparation proceeded, the parties also engaged in plea negotiations during this period.

Instead of proceeding to a second trial, Petitioner entered into a written plea agreement, pursuant to which he pled guilty to the armed robbery count and one of the firearms counts. Id., doc. nos. 257, 258. In the plea agreement, the parties agreed to a 240-month sentence and both parties waived the right to appeal that sentence; additionally, the parties waived the requirement of having a presentence investigation report ("PSI") prepared. Id., doc. no. 258, p. 4. Notably, the plea agreement was executed pursuant to Federal Rule

2

of Criminal Procedure 11(c)(1)(C), such that any upward departure from the agreed-upon sentence by the sentencing judge would have afforded Petitioner the right to withdraw his guilty plea. Id. at 4. By affixing his signature to the plea agreement, Petitioner swore and affirmed under penalty of perjury that he understood the agreement and that he entered into the agreement "as a matter of [his] free and voluntary choice . . . ." Id. at 6-8.

On May 20, 2010, Judge Hall held a combined Rule 11 and sentencing hearing. Id., doc. nos. 256, 259, 268. At the May 20th hearing, Petitioner testified under oath that he had been given a chance to talk with Ms. Mathis and Ms. Demps as much as wished about the charges and that he was satisfied with their representation. Id., doc. no. 268, pp. 5, 9. Judge Hall proceeded to advise Petitioner of the charges in the indictment to which he was pleading guilty, as well as the elements that the government would have to prove to convict him on those charges. Id. at 11-13. Petitioner testified that he understood the offenses charged and the elements of those offenses, and stated that his conduct would satisfy the elements of those two offenses. Id. at 13.

Next, Paul Kubala, a Special Agent with the Federal Bureau of Investigation, testified to the factual basis for Petitioner's guilty plea. Id. at 13-17. Once Special Agent Kubala had concluded his testimony, Judge Hall asked if his testimony was true in Petitioner's view. Id. at 17-18. Petitioner responded, "Yes, sir," following which he stated that he participated in the armed robbery as charged and used a firearm during that robbery. Id. at 18. Based on the testimony of Special Agent Kubala and Petitioner, Judge Hall found that there was an adequate factual basis for Petitioner's guilty plea. Id.

Judge Hall proceeded to summarize the terms of the plea agreement. Judge Hall

3

reiterated the charges to which Petitioner was pleading guilty and reviewed the agreed-upon sentence: 120 months on the armed robbery count and 120 months consecutive on the firearm count, for a total of 240 months. Id. at 18-19. Judge Hall further explained to Petitioner:

> If I agree to this sentence then this is the sentence that you will receive in this case, and it will be the total sentence that you receive on the charges against you.
> On the other hand, if I decide for some reason not to impose the agreed-upon sentence – and I have that right – then I will tell you, and you will be given a chance to withdraw your guilty plea. If for some reason you decide at that time to withdraw your guilty plea, then not guilty pleas would be entered on these charges, and your case would then be scheduled for trial.

Id. at 21-22. Judge Hall also noted that if Petitioner received the 240-month sentence provided for in the plea agreement, his right to appeal that sentence would be waived. Id. at 20. Petitioner then testified that he had read and signed the plea agreement and that Judge Hall's description of the agreement was consistent with his understanding of the agreement. Id. at 20-21.

Additionally, Judge Hall informed Petitioner of the maximum statutory penalties for each of the charges to which he was pleading guilty. Id. at 22-23. Judge Hall asked Petitioner if anyone had "promised, predicted, or made a prophecy that [he] would receive a specific sentence in this case, . . . other than what is in the plea agreement." Petitioner responded, "No, sir." Id. at 25. Petitioner likewise attested that no one had forced or pressured him into pleading guilty. Id. Ms. Demps, who was acting as lead attorney at the hearing, testified that is was her belief that Petitioner's guilty plea on the two charges set forth in the plea agreement would be voluntary. Id. at 25-26. Judge Hall therefore accepted Petitioner's guilty plea and adjudged him guilty of the charges to which he pled guilty. Id.

4

at 27.

After accepting the guilty plea, Judge Hall moved directly into the sentencing portion of the proceeding. Pursuant to the parties' agreement, no PSI was prepared; however, Judge Hall determined at the sentencing hearing that Petitioner's total offense level under the advisory sentencing guidelines was 27, and that Petitioner's past convictions placed him in Criminal History Category II. Id. at 29. Judge Hall further determined that Petitioner's range under the advisory guidelines was 78 to 97 months as to the armed robbery count and 120 months consecutive as to the firearm count. Id. Pursuant to the terms of the plea agreement, Judge Hall departed upwardly from the guideline range for the armed robbery count, sentencing Petitioner to consecutive 120-month terms of imprisonment for each of the two counts to which he pled guilty, for a total of 240 months. Id. at 35. Petitioner did not file a direct appeal, but he did timely file the instant § 2255 motion.

### B.  Issues Raised In § 2255 Motion

Petitioner enumerates two grounds for relief in his § 2255 motion: (1) that Ms. Mathis[1] provided ineffective assistance of counsel by failing to file an appeal after Petitioner specifically requested that she do so; and (2) that his "counsel" was ineffective for failing to file an appeal on the ground that his guilty plea was not knowing and voluntary. (See generally doc. no. 1.)

### C.  Evidentiary Hearing

On February 24, 2011, the Court held an evidentiary hearing to resolve the issue of

---

[1]As explained below, Petitioner specifically directs the claim in Ground One at the representation provided by Ms. Mathis. In Ground Two, however, he generically refers to the ineffective assistance of his "counsel." See infra note 5.

whether Petitioner requested Ms. Mathis to file a notice of appeal.[2] (Doc. no. 6.) The Court

heard testimony from the following individuals: (1) Petitioner; (2) Petitioner's mother, Jean

Stevenson; (3) Petitioner's sister, Lajeanna Stevenson; (4) Petitioner's father, Calvin

Stevenson, Sr.; and (5) Ms. Mathis. In addition, the parties entered a stipulation regarding

testimony that would have been provided by Ms. Demps.

### 1.    Testimony of Petitioner

At the evidentiary hearing, Petitioner testified that he called Ms. Mathis shortly after

the May 20th hearing and requested that she file a notice of appeal. (FTR 10:09:50.)[3]

Petitioner also testified that on May 21, 2010, he sent Ms. Mathis a letter regarding his desire

for her to file a notice of appeal. (FTR 10:10:05.) A copy of this letter that he allegedly sent

Ms. Mathis was submitted into evidence at the hearing. (Pet. Ex. 1.) In the letter, which was

allegedly posted the day after the sentencing hearing, Petitioner memorialized having

previously called Ms. Mathis to request a notice of appeal; Petitioner also expressed concern

that he had not heard a response regarding his request that she file an appeal. (Id.) Petitioner

testified that he sent another letter to Ms. Mathis on May 25, 2010; a copy of this letter was

also submitted into evidence. (FTR 10:10:54; Pet. Ex. 2.) In the letter purportedly sent on

May 25th, Petitioner asked whether Ms. Mathis has filed a notice of appeal and questioned

why Ms. Mathis has not contacted him regarding the matter. (Pet. Ex. 2.) Petitioner

provided no proof of having mailed the May 21st and May 25th letters, either in the form of

---

[2]The Court appointed Mr. George R. Hall for the limited purpose of representing Petitioner at the hearing. (Doc. no. 6.) The scope of Mr. Hall's representation shall include filing any objections to this Report and Recommendation.

[3]Although a transcript of the August 3, 2010 hearing has not been prepared, the Court was able to review the proceedings on the Court's recording system, For the Record ("FTR").

a mailing receipt, a copy of an envelope, or records from the prison showing that he mailed the letters on the dates stated. (FTR 10:21:50.) In addition, the letters contained no mailing address and Petitioner could not recall any details regarding the address where he had allegedly sent the letters to Ms. Mathis. (FTR 10:23:00.)

Additionally, Petitioner discussed a third letter that he sent to the Clerk of Court on July 30, 2010. (FTR 10:11:26; Pet. Ex. 3.) In the July 30th letter, Petitioner wrote that he had requested that his trial counsel withdraw his guilty plea. (Pet. Ex. 3.) Also, Petitioner again expressed his concern that he had not received responses from his counsel. (Id.) The July 30th letter discussed the issue of filing a notice of withdrawal of Petitioner's guilty plea, but did not mention anything with regard to filing a notice of appeal. (Id.)

Petitioner testified that in addition to the call placed immediately following the hearing and the letters, he again tried to call Ms. Mathis about filing an appeal but did not hear back from her. (FTR 10:12:00.) Petitioner further testified that, following the May 20th hearing, neither Ms. Mathis nor Ms. Demps met with him to discuss the possibility of filing an appeal. (FTR 10:12:21 - 12:45.)

When confronted with his sworn testimony before Judge Hall at the May 20th hearing that he was satisfied with the assistance provided by Ms. Mathis and Ms. Demps and had a chance to talk with them as much as he wished about the charges against him, Petitioner stated that he had lied in giving that testimony because Ms. Mathis and Ms. Demps told him to do so. (FTR 10:14:50, 10:15:35.) Petitioner also stated that he lied under oath to Judge Hall when he said that he had committed the acts for which he was charged and had not been pressured into pleading guilty. (FTR 10:17:54.) However, Petitioner agreed that both Ms.

7

Demps and Ms. Mathis had gone over the plea agreement with him in detail before he signed it. (FTR 10:14:40.)

## 2. Testimony of Petitioner's Family Members

The Court next heard the testimony of Petitioner's mother, Ms. Jean Stevenson. Ms. J. Stevenson testified that she attended the May 20th hearing and that, after it concluded, she spoke with Petitioner at his place of incarceration. (FTR 10:29:53 - 30:04.) Ms. J. Stevenson testified that her son was unhappy with the sentence and that he asked her to call his lawyers to request that they file an appeal. (FTR 10:30:06 - 30:54.) She stated that she called both Ms. Mathis and Ms. Demps and left voice mail messages regarding her son's case. (FTR 10:30:54 - 31:18.) She testified that she never heard back from either attorney. (FTR 10:31:28.) While she could not remember the exact wording of the messages, she testified that, to the best of her recollection, she left messages for Ms. Mathis and Ms. Demps saying, "My son wants to do an appeal. Can you contact him?" (FTR 10:35:17 - 35:32.)

Petitioner's sister, Ms. Lajeanna Stevenson, provided similar testimony. She testified that Petitioner called her following the May 20th hearing and expressed his displeasure with the sentence he had received. (FTR 10:37:42.) Ms. L. Stevenson testified that, after speaking with Petitioner following his sentencing, she left a voice mail message for Ms. Demps saying that Petitioner was unhappy with his plea and asking Ms. Demps to contact him. (FTR 10:37:35 - 38:06.) Like her mother, Ms. L. Stevenson was not sure of the exact language of her message; she testified that she "could not be positively sure that [she] said that [Petitioner] wanted an appeal, but [she] did tell her that [Petitioner] wanted to withdraw his plea and that he was dissatisfied and [to contact Petitioner]." (FTR 10:38:07 - 38:18.)

Ms. L. Stevenson never attempted to call Ms. Mathis. (FTR 10:38:25.)

Petitioner's father, Mr. Calvin Stevenson, Sr., was the final witness called to testify on Petitioner's behalf. Mr. Stevenson testified that after speaking with his son, he called both Ms. Mathis and Ms. Demps several times within days of the May 20th hearing and left voice mail messages that Petitioner wanted to file an appeal. (FTR 10:40:56 - 41:54.) Mr. Stevenson stated that neither Ms. Demps nor Ms. Mathis responded to his messages. (FTR 10:44:31.) Mr. Stevenson initially indicated that Petitioner had expressed a desire to appeal his case, but later stated that Petitioner told him to instruct his counsel that he wanted to take back his guilty plea. (FTR 10:46:30 - 46:48.)

### 3. Testimony of Ms. Mathis

Ms. Mathis was the next witness to testify at the hearing. Ms. Mathis testified that she has 31 years of experience as an attorney and had represented clients in several hundred cases, approximately a third of which involved criminal matters. (FTR 10:47:52 - 48:03.) Ms. Mathis indicated that she appeared as Petitioner's attorney following his trial and conviction on the charges against him. (FTR 10:48:13.) Ms. Mathis testified that she filed, among other things, a motion for new trial and notice of appeal on Petitioner's behalf. (FTR 10:49:00 - 50:10.) Ms. Mathis explained that the motion for a new trial she filed was granted, which resulted in Petitioner's conviction being vacated and the notice of appeal being dismissed as moot. (FTR 10:50:15 - 50:37.) Ms. Mathis testified that, following the grant of a new trial, she began to discuss a possible plea agreement with opposing counsel, and she stated that she received a communication from Petitioner that he was interested in entering into a plea agreement that would result in a sentence in the 15 to 17 year range.

(FTR 10:51:01 - 52:26.) Though she continued to explore options for a plea agreement, Ms. Mathis attempted to withdraw as Petitioner's attorney around this time, but was denied permission to do so. (FTR 10:53:09 - 10:53:30.) According to Ms. Mathis, Ms. Demps was retained as Petitioner's counsel during the latter part of April 2010, at which time she immediately took on the role of lead attorney. (FTR 10:50:42, 10:53:35.) From that point on, Ms. Demps handled plea negotiations, and she was eventually successful in negotiating the plea agreement that Petitioner entered into. (FTR 10:53:48.)

Ms. Mathis stated that although Ms. Demps was the lead attorney with respect to the May 20th Rule 11/sentencing hearing, Ms. Mathis met with Petitioner prior to the hearing regarding his guilty plea. (FTR 10:54:20.) Ms. Mathis stated that during the meeting, she reviewed the terms of the plea offer with Petitioner and talked about the rights he would be giving up by entering a guilty plea. (FTR 10:54:56 - 55:10.) Ms. Mathis denied having told Petitioner to lie to Judge Hall. (FTR 10:55:12.)

Furthermore, Ms. Mathis testified that Petitioner never asked her to file a notice of appeal or to withdraw his guilty plea. (FTR 10:55:48.) Ms. Mathis testified that she did not receive either the May 21st or May 25th letters that Petitioner alleges to have sent requesting her to file a direct appeal.[4] (FTR 10:56:05 - 10:56:40.) Ms. Mathis also testified that she did not receive any messages from Petitioner's family members regarding a request to file a notice of appeal. (FTR 10:59:54.) Ms. Mathis did attest to having received emails from

---

[4]Ms. Mathis acknowledged having received the July 30, 2010 letter addressed to the Clerk of Court, but stated that she did not initially see the letter at the time it arrived. Ms. Mathis believes that her office staff may have placed the letter in Petitioner's file without her seeing it because it was received more than two months after the conclusion of Petitioner's criminal case, by which point she had filed away Petitioner's case as closed. (FTR 10:56:50 - 58:19.)

10

Petitioner's father, as email was their usual means of communicating, but Ms. Mathis stated that she had reviewed the emails in preparation for the evidentiary hearing and none of them mentioned filing an appeal. (FTR 11:00:10 - 00:43.) Ms. Mathis testified that it would have taken her approximately five minutes to draft a notice of appeal, and she said that she would have filed a notice of appeal if Petitioner had asked her to do so – especially after having put hundreds of hours of work into his case. (FTR 10:59:30.) In addition, Ms. Mathis acknowledged that she did not consult with Petitioner following his sentencing about filing an appeal. (FTR 11:03:21.)

Although Ms. Demps did not testify at the hearing, the parties stipulated that "if called to testify, [Ms. Demps] would state that she never had any conversations or correspondence with [Petitioner] about an appeal at any time after [the May 20th hearing]." (FTR 11:11:08 - 11:33.)

Having set forth the relevant background and the factual contentions at issue, the Court resolves the matter as follows.

## II.    DISCUSSION

As noted above, Petitioner has raised two claims in the instant § 2255 motion, both of which are premised on the allegedly ineffective assistance of Petitioner's trial counsel. Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1994), which is not a favorable standard to Petitioner. Massaro v. United States, 538 U.S. 500, 505 (2003). First, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In applying this test, reviewing courts "must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonably professional assistance[.]" Id.; see also Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing "that petitioner was not entitled to error-free representation"). "A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Second, Petitioner must establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In the context of a guilty plea, the Court must normally inquire as to whether counsel's performance affected the outcome of the plea process. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In applying the Strickland components outlined above, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). For as the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be

12

prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). As the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc). "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Id. at 1511.

With these governing standards in mind, the Court will address each of Petitioner's specific claims.

### A.    No Ineffectiveness of Counsel for Failure to File Notice of Appeal

In Ground One of his § 2255 motion, Petitioner argues that Ms. Mathis provided ineffective assistance of counsel by failing to file a notice of appeal, despite his request that she do so.[5] (See doc. no. 1, p. 4; doc. no. 2, pp. 2-9.) Before addressing this claim, the Court

---

[5]The Court is mindful of the testimony regarding the alleged communications with Petitioner's other attorney, Ms. Demps, regarding Petitioner's alleged request for an appeal. However, Ground One of Petitioner's § 2255 motion only raises a claim that Ms. Mathis provided ineffective assistance of counsel by failing to file an appeal. Indeed, Ms. Demps's name does not appear in Petitioner's § 2255 motion or the brief he filed in support of his motion. (See generally doc. nos. 1, 2.) Accordingly, the Court will limit its analysis to the claim set forth in the petition; that is, the Court will evaluate whether Ms. Mathis, but not Ms. Demps, provided ineffective assistance by failing to file an appeal.

will explain the applicable principles of law.

Cases in which a criminal defendant explicitly instructs his attorney to file a notice of appeal are subject to a bright-line rule. "[A]n attorney's failure to file an appeal after the defendant requests him to do so entitles the defendant to an out-of-time appeal, even without a showing that there would have been any viable grounds for an appeal." Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995) (*per curiam*); see also Roe v. Flores-Ortega, 528 U.S. 470, 477-78 (2000) (holding that it is professionally unreasonable for an attorney to fail to follow a defendant's express instructions with respect to an appeal). Thus, if the Court determines that Ms. Mathis failed to honor a request to file a notice of appeal, it must grant Petitioner's § 2255 motion on that ground.

### 1.    No Request for Appeal Made

In this case, the threshold issue relates to credibility. Particularly, the Court must weigh the testimony of Ms. Mathis that Petitioner never asked her to file an appeal against the self-serving allegations of Petitioner and the other conflicting evidence presented at the evidentiary hearing.

Generally, when the testimony conflicts, the Court, as fact finder and "ultimate judge of the credibility and demeanor of witnesses," must believe one witness over the other. McCoy v. Newsome, 953 F.2d 1252, 1262 (11th Cir. 1992) (*per curiam*). More specifically, the determination of the credibility of a testifying attorney during an evidentiary hearing on a claim of ineffective assistance of counsel is a matter within the Court's good discretion. See Carr v. Schofield, 364 F.3d 1246, 1264-65 (11th Cir. 2004).

Here, the Court specifically credits the testimony of Ms. Mathis over Petitioner's

14

testimony and the other conflicting evidence presented in support of Petitioner's claim. Ms. Mathis has over 30 years of experience as an attorney and has devoted a third of her practice to criminal cases. Furthermore, she put hundreds of hours of work into Petitioner's case, during which time she proved herself to be an ethical and zealous advocate for his interests; indeed, it was her effort that resulted in Petitioner's initial sentence of over 500 months of incarceration being vacated upon the grant of Petitioner's second motion for a new trial. After so much quality work on Petitioner's case, the notion that she would ignore a specific request to file a notice of appeal on Petitioner's behalf – which would have taken a matter of minutes – and then lie to the Court about this circumstance is not credible.

At the evidentiary hearing, Ms. Mathis consistently maintained that she never received any communications from Petitioner instructing her to file an appeal. (FTR 10:55:48.) Ms. Mathis specifically testified that she never received the letters that Petitioner alleged to have sent on May 21 and 25, 2010, requesting that she file a notice of appeal. (FTR 10:56:05 - 10:56:40.) Ms. Mathis further specified that she received no communication from any member of Petitioner's family requesting a notice of appeal. (FTR 10:59:54.) Moreover, as noted above, Ms. Mathis stated that she would have filed a notice of appeal if Petitioner had asked her do so. (FTR 10:59:30.)

Additionally, Ms. Mathis testified that she met with Petitioner prior to the May 20th hearing and explained the terms of his plea agreement and the rights that he would forfeit by entering into the plea agreement. (FTR 10:54:20 - 55:10.) She also informed Petitioner at that meeting that it would be very difficult to withdraw his Rule 11(c)(1)(C) guilty plea after it was entered. (Id.) Furthermore, Ms. Mathis candidly admitted that she did not consult

15

with Petitioner following the May 20th hearing. (FTR 11:03:21.)

In contrast with the unwavering testimony of Ms. Mathis, Petitioner's self-serving allegations that he called and sent letters to Ms. Mathis to request that she file a notice of appeal are not credible. The fact that Petitioner has produced copies of the hand-written letters he allegedly sent is likewise unavailing, as Petitioner could produce no proof that he actually posted these letters to Ms. Mathis, either in the form of a mail receipt or prison mailing records. Rather, the May 21st and May 25th letters are merely a written version of the unreliable allegations asserted in his testimony. The only letter that Petitioner could show that he actually posted was sent on July 30, 2010, nearly two months after his sentencing and well outside the time limit for filing an appeal, and the July 30th letter nowhere mentions filing an appeal. Moreover, Petitioner's testimony that he left voice mail messages and wrote letters instructing Ms. Mathis to file a notice of appeal are severely undermined by Ms. Mathis's credible testimony that she never received the letters and that Petitioner never communicated with her about filing an appeal. Furthermore, Petitioner has shown a total lack of credibility by admitting to having repeatedly lied under oath to Judge Hall during the May 20th hearing. (FTR 10:14:50, 10:15:35.) Indeed, Petitioner has exhibited a tendency to say whatever serves his present interest, with no regard at all for having sworn an oath to tell the truth.

The testimony of Petitioner's family members that they called and left voice mail messages for Ms. Mathis regarding Petitioner's desire to file an appeal is likewise inadequate to establish that Ms. Mathis refused to honor a request to file a notice of appeal. While Petitioner's mother and father each testified that they called Ms. Mathis to request that she

contact Petitioner regarding an appeal, they also each testified that they were unsure exactly what they said in the messages they left. This uncertainty is significant because in the testimony of each of these witnesses there were signs of confusion over the difference between filing a notice of appeal and moving to withdraw a guilty plea. For example, Petitioner's sister stated that she "could not be positively sure that [she] said that [Petitioner] wanted an appeal, but [she] did tell her that [Petitioner] wanted to withdraw his plea and that he was dissatisfied and [to contact Petitioner]." (FTR 10:38:07 - 38:18.) Similarly, Petitioner's father initially testified that he left a message that Petitioner wanted to file an appeal; however, when asked to clarify the exact nature of his message, he indicated that he had said Petitioner wanted to take back his plea. (FTR 10:46:30 - 46:48.)

The Court recognizes that the distinction between a motion to withdraw a guilty plea and a direct appeal might not be readily apparent to a layperson; however, the distinction is significant, and Ms. Mathis clearly appreciated the importance of that distinction. Ms. Mathis indicated that she had communicated with Petitioner's father following Petitioner's sentencing; however, she explicitly stated that at no point during that communication did he mention filing an appeal for Petitioner. (FTR 11:00:10 - 00:43.) Furthermore, it is notable that the normal mode of communication between Petitioner's father and Ms. Mathis was email, yet no emails mentioning an appeal were produced; instead, all of the communications regarding the vital issue of filing an appeal purportedly occurred by way of unverifiable voice mail messages. Finally, the testimony of Petitioner's family members that they left messages telling Ms. Mathis to file an appeal are undermined by Ms. Mathis's unequivocal and credible testimony that she did not receive any communication from anyone concerning a

request by Petitioner to file a notice of appeal.

In light of these considerations, the Court **FINDS** that Petitioner never requested that Ms. Mathis file an appeal.[6]

### 2. No Duty to Consult Regarding an Appeal

Even though the Court finds that Ms. Mathis was not instructed to file an appeal on behalf of Petitioner, the Court's inquiry does not end there. Indeed, the Eleventh Circuit recently held that even in cases where a defendant does not specifically instruct his counsel to file an appeal, the Court must still determine whether counsel had a duty to consult with the defendant about an appeal and, if so, 'whether counsel in fact consulted with the defendant about an appeal.'" Thompson v. United States, 504 F.3d 1203, 1206 (11th Cir. 2007) (quoting Flores-Ortega, 528 U.S. at 478). With respect to the instant motion, it is undisputed that neither of Petitioner's attorneys consulted with him about an appeal after his sentencing. The determinative question, therefore, is whether there was a duty to consult under the circumstances.

"Counsel generally has a duty to consult with the defendant about an appeal." Thompson, 504 F.3d at 1206. However, the Supreme Court specifically declined to adopt

---

[6]As noted above, despite the testimony regarding alleged messages left with Ms. Demps, the Court's analysis is limited to the claim asserted in Petitioner's § 2255 motion that Ms. Mathis provided ineffective assistance by failing to file an appeal. The Court will likewise limit its findings to the claim set forth in the petition and will not make definitive findings as to whether members of Petitioner's family called and left messages for Ms. Demps regarding an appeal of Petitioner's sentence. Nevertheless, the Court notes the parties' stipulation that, if called to testify, Ms. Demps would deny having received any request to file a notice of appeal. (FTR 11:11:08 - 11:33.) Also, Petitioner does not allege having called Ms. Demps or having written letters to Ms. Demps requesting that she file an appeal. Moreover, the bulk of the credibility issues that led the Court to conclude that Petitioner had not requested that Ms. Mathis file an appeal would apply in the case of Ms. Demps as well.

"a bright-line rule that counsel must always consult with the defendant regarding an appeal."

Flores-Ortega, 528 U.S. at 480. Rather, taking into consideration the totality of the circumstances,

> [C]ounsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

Id. Furthermore, the Supreme Court provided the following guidance as to the circumstances that factor into the determination of whether counsel has a duty to consult with a defendant about an appeal:

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.

Id.

The Court concludes that under the circumstances present during the relevant time period in this case, Petitioner's counsel did not have a duty to consult with him about an appeal. Indeed, each of the factors discussed by in Flores-Ortega that weigh against finding a duty to consult are present in this case. Petitioner's conviction followed a guilty plea. Moreover, Petitioner entered his plea pursuant to a plea agreement, and he received the sentence bargained for and agreed upon in that plea agreement. Additionally, in his plea agreement, Petitioner waived the right to appeal his sentence so long as he received the agreed-upon sentence, which he did. Thus, the scope of appealable issues was extremely

narrow, and Petitioner has not identified any nonfrivolous grounds for appeal. Accordingly, the Court finds that there was no reason for Petitioner's counsel to think that a rational defendant would want to appeal; also, as discussed above, Petitioner had not reasonably demonstrated to counsel that he was interested in appealing. Therefore, Petitioner's counsel had no duty to consult with him about an appeal.

In addition, it bears mentioning that the plea agreement that Petitioner entered into allowed him to avoid several serious charges and ultimately resulted in a sentence of 240 months, when Petitioner's vacated trial had resulted in a sentence of over 500 months. Moreover, Petitioner's sentence was reduced for the time he served awaiting trial, and, assuming he takes advantage of the opportunity for good conduct time, his sentence will be further be reduced by 54 days per year served. See 18 U.S.C. § 3624(b)(1); 28 C.F.R. § 523.20(a). Although the Court specifically finds that Petitioner did not request that Ms. Mathis file an appeal, it is notable that as a result of the plea agreement he allegedly sought to appeal, Petitioner avoided facing charges that could have led to a much longer sentence and instead received a sentence that, when adjusted for time served and good conduct time, is squarely within the 15 to 17 year range that Petitioner stated he communicated to Ms. Mathis as an acceptable range for a plea agreement. (FTR 10:51:01 - 52:26.)

In sum, the Court finds that Petitioner is not entitled to relief on his claim in Ground One of his § 2255 motion that Ms. Mathis failed to file an appeal on Petitioner's behalf.

### B.     No Ineffective Assistance of Counsel for Failure to Appeal Voluntariness of Guilty Plea

In Ground Two of his § 2255 motion, Petitioner asserts that his counsel provided ineffective assistance because he instructed his counsel to appeal on the basis that his plea

was not knowing and voluntary, but his counsel refused to do so. (Doc. no. 1, p. 5.)

This claim is also without merit. First, the Court's finding that Petitioner did not request his trial counsel to file an appeal precludes relief on Petitioner's ineffective assistance of counsel grounds because Petitioner has not shown that his trial counsel's performance was objectively unreasonable, see supra Part II.A.[7] Second, Petitioner's allegation that his guilty plea was not knowing and voluntary is made in a conclusory fashion. Petitioner makes no attempt in his § 2255 motion to explain why his guilty plea was not knowing and voluntary, and he alleges no specific facts in support of this claim. For this reason alone, this claim must fail. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that claims consisting of "conclusory allegations unsupported by specifics" are subject to dismissal).

Furthermore, assuming in light of his testimony that Petitioner means to argue that his plea was not knowing and voluntary because he was "under duress" due to time constraints (see FTR 10:14:50 - 15:35), such argument is without merit and cannot support his claim that his counsel was ineffective for failing to raise such argument on appeal. The Eleventh Circuit has described the requirements for a valid guilty plea as follows:

> "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights." A plea of guilty "cannot support a judgment of guilt unless it was voluntary in a constitutional sense." Aside from the obvious involuntariness of a coerced plea, the

---

[7]Although the Court has limited its analysis of Ground One to the issue of whether Petitioner requested that Ms. Mathis file an appeal, see supra note 5, Petitioner has not presented credible evidence that he asked Ms. Demps file an appeal on the issue of the voluntariness of his guilty plea. Thus, to the extent that Petitioner's generic reference to "counsel" in Ground Two refers to Ms. Demps, the analysis of Ground One set forth above applies equally to any possible claim in Ground Two regarding Ms. Demps' failure to file an appeal based on the alleged involuntariness of Petitioner's plea.

21

Supreme Court has identified two other ways that a defendant's guilty plea may be involuntary in a constitutional sense:

> A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense.

As the Supreme Court has plainly instructed, the voluntariness requirement is not satisfied unless the defendant receives real notice of the true nature of the charged crime: "[C]learly the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"

United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997) (internal citations omitted).

In light of this standard, any claim by Petitioner that his guilty plea was not knowing and voluntary because of insufficient time to prepare for trial is contradicted by the record. Petitioner moved for, and was granted, a continuance of his second trial for the express reason of providing additional time for his counsel to prepare. CR 108-061, doc. no. 251. Also, by signing his plea agreement, Petitioner swore that he understood the agreement and that he entered into the agreement "as a matter of [his] free and voluntary choice . . . ." Id., doc. no. 258, pp. 6-8. Additionally, during the Rule 11 colloquy, Judge Hall carefully explained the charges to which Petitioner was pleading guilty and the elements that the government would have to prove to convict him on those charges. Id., doc. no. 268, pp. 11-13. Petitioner then testified under oath that he had been given a chance to talk with his counsel as much as wished about the charges and that he was satisfied with the representation

provided by Ms. Mathis and Ms. Demps. Id. at 5, 9. Petitioner also stated that he understood the offenses charged and the elements of those offenses, and he further testified that his conduct would satisfy the elements of those two offenses. Id. at 13. Moreover, Judge Hall explained the key terms of Petitioner's plea agreement to him during the hearing, following which Petitioner testified that he had read and signed the plea agreement and that Judge Hall's description of the agreement was consistent with his understanding of the agreement. Id. at 20-21. Finally, Petitioner testified that he had not been forced or pressured into pleading guilty, and he stated that no one had made any promises, predictions, or promises as to what his sentence would be, other than the terms set forth in his plea agreement. Id. at 25-26.

Because the record is clear as to the intelligent and voluntary entry of Petitioner's guilty plea, any claim on appeal challenging his guilty plea on this basis would have been without merit. Therefore, even if Petitioner had asked his counsel to file an appeal on this issue, he would have suffered no prejudice as a result of his counsel's failure to raise such a claim on direct appeal. United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (holding that counsel is not ineffective for failing to raise a frivolous argument on appeal).

In sum, the Court finds that Petitioner is not entitled to relief on Ground Two of his § 2255 motion.

### III.    CONCLUSION

For the reasons set forth above, the Court finds that Petitioner is not entitled to relief under § 2255. The Court therefore **REPORTS** and **RECOMMENDS** that the § 2255 motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be

**ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 18th day of March, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE